spring-jawed catch being a proper kind of appliance. The plaintiff's point, "It is the duty of the defendant to provide doors that are kept open with secure fastener and to inspect them often enough to insure discovery of any defect or weakening," and the court's answer, "It is the duty of the company to secure fasteners such as are usually used and to keep them in proper condition for the purposes for which they are used," to which no objection or exception was then taken, shows that, as the parties tried the case, the issue for the jury was whether the catch on this door did its work. In that respect the court said:

"Those doors, as you know, are not intended to be fastened so they cannot be opened and closed, and the intention of those fasteners is that they shall hold them, so as to require a vigorous pull to loosen them, and if you push them back hard they fasten so that you do not have to hook or unhook them."

Certainly the plaintiff had no reason to complain of this standard of "a vigorous pull" to open and "push them hard back" to close. But even with this required standard the jury found for the defendant. It is now contended, however, that the court erred when it charged:

"That if defendant used the ordinary fastener used to fasten doors of that kind back and to open them, and that fastener was in the usual condition and held the door as those fasteners are intended to hold doors, * * * then the defendant company has done all that the law requires of it."

In view of the testimony of the plaintiff himself that the door was regulated as other doors were, that of his witness, the negligence charged in his statement, the answer to his point, and the general course of the trial, we find no error in the court also treating the fastener on that car as the only one involved and in leaving to the jury the issue on which the case turned, namely, whether that fastener was in such order as to require a vigorous pull to open it and a hard pull to close it. In plain and simple terms the working order of the device was submitted to the jury, and the outcome shows they were satisfied with its condition and workings.

Such being the case, it follows the defendant was not negligent, and the judgment below should be affirmed.

---

## UNITED STATES v. ATLANTA JOURNAL CO.

(Circuit Court of Appeals, Fifth Circuit.　October 7, 1913.)

No. 2,421.

Post Office (§ 15*)—Postage—Change of Rate—Authority of Postmaster General.

The regulation promulgated by the Postmaster General December 4, 1907, amending rule 456 of the Postal Laws and Regulations, to the effect that sample copies of a publication of the second class shall be accepted for mailing at the second-class rate of one cent per pound fixed by Act March 3, 1885, c. 342, § 1, 23 Stat. 387 (U. S. Comp. St. 1901, p. 2669), to the extent of 10 per cent. of the total weight of copies mailed to subscribers during the calendar year and requiring a higher rate on any excess above such 10 per cent., is an unauthorized restriction of the right given the publisher by the statute to mail both copies to subscribers and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sample copies at the one-cent rate without any limitation as to the quantity.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 22; Dec. Dig. § 15.*]

In Error to the District Court of the United States for the Northern District of Georgia; Don A. Pardee, Judge.

Action at law by the United States against the Atlanta Journal Company. Judgment for defendant on demurrer, and plaintiff brings error. Affirmed.

The following is the opinion of the District Court (Pardee, Circuit Judge):

The facts are that in 1908 the Atlanta Journal Company sent through the mails for delivery to subscribers 691,112 pounds of the semiweekly Journal, and also during the same year sent through the mails for transmission and delivery to divers persons, not subscribers or news agents, and as sample copies, 113,706 pounds of the semiweekly Journal; for and on all of which, as publications of the second class, the Journal Company paid the postage of one cent per pound, and as provided in the act of Congress approved March 3, 1885, 23 Stat. 387.

Now it seems that on December 4, 1907, the Postmaster General promulgated a regulation, taking effect January 1, 1908, amending rule 456 of the Postal Laws and Regulations and pertaining to second-class mail matter, to the effect that sample copies of publications entered as second-class matter shall be accepted for mailing at the second-class postage rate of one cent per pound to the extent of 10 per centum of the total weight of copies mailed to subscribers during the calendar year.

This rule has many detailed provisions relating to sample copies and the handling of the same, particularly providing that should a publisher offer for mailing, as sample copies, copies in excess of the amount above described, the postmaster shall require on such excess a deposit of money sufficient to cover postage at the transient second-class rate of one cent for each four ounces, etc., and report the matter, with details, to the Third Assistant Postmaster General.

According to this rule, the Journal Company was entitled to mail as sample copies of the semiweekly Journal, during the year 1908, 69,111 pounds of mail matter. The company actually mailed as sample copies of its publication 44,595 pounds in excess of the 10 per cent. limitation. Upon this excess the Journal Company paid postage at the rate of one cent per pound, and the matter was transmitted through the mails; and this suit is brought to recover the difference between that one cent per pound rate and the transient second-class rate of one cent for each four ounces.

It is inferable from the declaration, and it is admitted at the bar, that the copies of the semiweekly Journal transmitted through the mails for which the excess of postage is claimed, were sample copies in fact, and entitled to be carried in the mails as sample copies, within the purview of the act of Congress of 1885, unless the regulation promulgated by the Postmaster General in December, 1907, deprived them of that character and made them liable to a postage rate of four cents per pound, instead of a rate of one cent per pound as provided in the act of 1885. The regulation does not specifically define sample copies nor change the actual character of the matter. It restricts the quantity of sample copies publishers of publications of the second class may send through the mails as "sample copies" at one cent per pound. In effect, the regulation restricts the publisher's rights under the statute, changing to his injury both classification and rate, and this is beyond the authority of the Postmaster General. Adjudged cases to this effect are numerous, but I am satisfied with Payne v. Railway Publishing Co., 20 App.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

D. C. 581; Review of Reviews Co. v. Hitchcock (C. C.) 192 Fed. 360. And see Houghton v. Payne, 194 U. S. 88, 24 Sup. Ct. 590, 48 L. Ed. 888.

The demurrer to the declaration is sustained.

Alexander Ackerman, Sp. Asst. Atty. Gen., of Macon, Ga., for the United States.

Alex. C. King, of Atlanta, Ga., for defendant in error.

Before SHELBY, Circuit Judge, and FOSTER, District Judge.

PER CURIAM. The judgment of the District Court is affirmed.

---

## G. RICORDI & CO. v. MASON.

(Circuit Court of Appeals, Second Circuit. December 9, 1913.)

### No. 76.

COPYRIGHTS (§ 60*)—INFRINGEMENT—LIBRETTOS OF OPERAS—"VERSION."

A booklet entitled "Opera Stories," giving a mere fragmentary description of the plot and characters of various operas, each scene being covered by a single paragraph and taken from descriptions other than the operas themselves, is not a "version" within the statute and is not an infringement of the copyrights on the librettos.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 56; Dec. Dig. § 60.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing a bill in equity by which it was sought to enjoin the defendant from publishing and selling a certain publication entitled "Opera Stories," upon the ground that such publication contained matter infringing certain copyrights owned by complainant. Judge Hazel's opinion will be found in 201 Fed. 184. Judge Coxe had the same question before him on application for a preliminary injunction which he denied. 201 Fed. 182.

Nathan Burkan, of New York City, for appellant.

G. F. Lewis, of New York City (Alex. P. Browne, of Boston, Mass., of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. It seems unnecessary to add anything to the two opinions referred to supra. We are clearly of the opinion that these extremely brief epitomes of the plots of the two operas, the librettos of which have been copyrighted and are the property of complainant, are neither of them in any true sense "a version" of the copyrighted work, as that word is used in the statute.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes